UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ELKO BROADBAND LTD., | Case No. 3:20-cv-00293-LRH-CLB |
| Plaintiff, | ORDER |
| v. | |
| HAIDERMOTA BNR, LAWYERS AND COUNSEL WITH OFFICES IN ISLAMABAD, ISLAMIC REPUBLIC OF PAKISTAN, and PWR FERGUSON AN ACCOUNTING FIRM WITH OFFICES IN ISLAMIC REPUBLIC OF PAKISTAN, | |
| Defendants. | |

Before the Court is Defendant Haidermota BNR, Lawyers and Counsel with Offices in Islamabad, Islamic Republic of Pakistan's ("Haidermota BNR") motion to dismiss for lack of personal jurisdiction (ECF No. 4). Plaintiff Elko Broadband Ltd. ("Elko Broadband") filed an opposition (ECF No. 9) to which Haidermota BNR replied (ECF No. 13) Also, before the Court is PWR Ferguson's[1] ("Ferguson") motion to dismiss for lack of personal jurisdiction (ECF No. 6). Elko Broadband filed an opposition (ECF No. 12) to which Ferguson replied (ECF No. 14). For the reasons articulated in this Order, the Court grants both motions to dismiss.

## I. BACKGROUND

This case concerns an international business transaction between Elko Broadband, Wateen Telecom Limited ("WTL"), Warid Telecom International ("WTI"), and Dhabi Holdings PJSC

---

[1] It appears that Elko Broadband incorrectly named PWR Ferguson as a Defendant instead of A.F. Ferguson & Company (which is an affiliate of PricewaterhouseCoopers). The use of "Ferguson" in this Order refers to A.F. Ferguson & Company.

1

("Dhabi"). Elko Broadband alleges it began negotiations with WTI and Dhabi for the purchase of WTL in January 2017. ECF No. 1-1, at 5. After more than a year of negotiations, Elko Broadband and WTI entered into a binding agreement for the sale of WTL. *Id.* at 7. However, in March of 2019, it was discovered that Dhabi—the primary shareholder of WTI—had sold its ownership of WTI at the end of 2018. *Id.* at 8, ¶ 60. Thus, because the ownership of WTI had changed hands before the sale of WTL, the entire transaction became unfeasible. *Id.* at 8. This failed transaction serves as the basis for various lawsuits filed by Elko Broadband.

Elko Broadband's present complaint is against both Haidermota BNR and Ferguson. ECF No. 1-1. Elko Broadband, a Nevada corporation, asserts professional legal malpractice against Haidermota BNR, a Pakistani law firm, and professional accounting malpractice against Ferguson, a Pakistani accounting firm. *Id.*

Haidermota BNR is a regional law firm with locations throughout the Islamic Republic of Pakistan. ECF No. 4, at 2. Elko Broadband alleges that its executives met with attorneys of Haidermota BNR in Pakistan for advice and assistance regarding Pakistani laws and procedures with the attempted purchase of WTL. ECF No. 1-1, at 5. For Haidermota BNR's representation, Elko Broadband signed an engagement letter which provided that, "…the terms of our services and any opinions rendered by us shall be governed by and construed in accordance with laws of Pakistan. Courts in Karachi shall have exclusive jurisdiction to entertain/adjudicate all claims, disagreements and disputes directly or indirectly arising out of our legal services and this Proposal." ECF No. 4-2.  Here, Elko Broadband alleges that Haidermota BNR failed to provide Elko Broadband a shareholder list and other critical exhibits which would have influenced its decision to continue with the doomed transaction. ECF No. 1-1.

Similarly, Ferguson is an accounting firm in the Islamic Republic of Pakistan with its regional office in Lahore, Pakistan. ECF No. 6, at 2. Between January 2018 and July 2018, Ferguson reviewed the audited financial statements of WTL, as well as other pertinent information provided by Dhabi. ECF No. 1-1, at 5. Elko Broadband's executives met with representatives of Ferguson in Lahore, Pakistan, where Ferguson confirmed that the transaction was workable and that the sale of WTL was authorized by the Government of Pakistan. *Id.* at 7. After Elko Broadband

2

learned that the sale would be unable to go forward, it alleges that Ferguson committed accounting malpractice in conducting the review of the transaction. ECF No. 1-1.

Elko Broadband commenced the present action in the Fourth Judicial District Court of the State of Nevada, in and for the County of Elko, against both Defendants alleging both legal and accounting malpractice. After determining that the amount in controversy and diversity of citizenship requirements were met, Ferguson removed the action to this Court in accordance with 28 U.S.C. §§ 1332 and 1441. Both Defendants now seek dismissal for this Court's apparent lack of personal jurisdiction.

## II.  LEGAL STANDARD

A court may dismiss a complaint for lack of personal jurisdiction over the defendant. FED. R. CIV. P. 12(b)(2). Where a defendant challenges the court's personal jurisdiction, the plaintiff bears the burden of demonstrating the court has jurisdiction over the defendant. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004); *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). A plaintiff makes a prima facie showing of personal jurisdiction by introducing competent evidence of essential facts which support jurisdiction. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995); *see also Trump v. District Court*, 857 P.2d 740, 743 (Nev. 1993). Where, as here, the court receives only written materials, the plaintiff need only make a prima facie showing through its pleadings and affidavits that the exercise of personal jurisdiction over the defendant is proper. *Schwarzenegger*, 374 F.3d at 800. Although a plaintiff cannot simply rest on the bare allegations of its complaint, the uncontroverted allegations in the plaintiff's complaint are taken as true, and conflicts between the facts contained in the parties' affidavits are resolved in the plaintiff's favor. *Id.*

To establish personal jurisdiction, the plaintiff must show that the forum's long-arm statute confers personal jurisdiction over the out-of-state defendants and that the exercise of jurisdiction does not violate federal constitutional principles of due process. *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1396 (9th Cir. 1986). Nevada's long-arm statute permits the exercise of jurisdiction on any basis consistent with federal due process. NRS. § 14.065(1). Federal due process requires that a defendant "have certain minimum contacts with the

forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations and citations omitted).

### III. DISCUSSION

In both motions to dismiss, Defendants argue that the conduct alleged created insufficient contacts with Nevada to exercise either general or specific jurisdiction. ECF Nos. 4, 6. The Court agrees. In addition, Haidermota BNR argues in its motion that the parties agreed to adjudicate any dispute arising from its representation in the courts of Karachi, Pakistan. ECF No. 4, at 7. Here too, the Court also agrees.

#### A. General Jurisdiction

Personal jurisdiction over a nonresident defendant may be either general or specific. *Helicopteros Nationales de Columbia S.A. v. Hall*, 466 U.S. 408, 414 (1984). A court may exercise general jurisdiction over a defendant if the defendant's activities in the forum are either "substantial" or "continuous and systematic" such that the defendant's activities approach a "physical presence" in the forum, even if those contacts did not give rise to the action. *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).

As to general personal jurisdiction, both Haidermota BNR and Ferguson's contacts with Nevada are neither continuous nor systematic enough to approximate a physical presence in the state. Haidermota BNR is purely a regional law firm located in Pakistan and practices solely Pakistani law and procedure. It cannot and has not conducted any business in Nevada. It does not maintain any office or employee in Nevada and all its lawyers reside in Pakistan. Relatedly, Ferguson—while associated with the international accounting firm PricewaterhouseCoopers—is wholly situated in Pakistan. It does not conduct its services in Nevada, and its employees and offices are spread out in Karachi, Lahore, and Islamabad, Pakistan. Therefore, the Court finds that it cannot exercise general jurisdiction over either Haidermota BNR or Ferguson in this action.

#### B. Specific Jurisdiction

In contrast, for a court to exercise specific jurisdiction, the action must arise out of the defendant's forum-related activities such that he can reasonably anticipate being haled into court.

*Bancroft*, 223 F.3d at 1086. Specific jurisdiction is determined by analyzing the "quality and nature of the defendant's contracts with the forum state in relation to the cause of action*." Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987). The Ninth Circuit uses a three-part test for personal jurisdiction: (1) the defendant must purposefully direct his activities to the forum state or purposefully avail himself of the privilege of conducting activities in the forum state; (2) the claim arises out of or relates to the defendant's forum related activities; and (3) the exercise of jurisdiction is reasonable. *See Bancroft*, 223 F.3d at 1086; *Schwarzenegger*, 374 F.3d at 802.

The Court also finds that it cannot exercise specific personal jurisdiction over either Haidermota BNR or Ferguson because, under the first prong of the Ninth Circuit three-part test, they did not purposefully avail themselves to conducting activities in Nevada. Purposeful availment requires that the defendant exhibit affirmative conduct allowing or promoting business transactions within the forum state, thus invoking the benefits and protections of its law. *Hanson v. Denckla,* 357 U.S. 235, 253 (1958); *Decker Coal Co. V. Commonwealth Edison Co.*, 805 F.2d 834, 840 (9th Cir. 1986). Personal jurisdiction must arise out of "contacts that the defendant *himself* creates with the forum…" *Walden v. Fiore*, 571 U.S. 277, 284 (2014). Because this purposeful availment analysis is fact-intensive, each Defendant's contact with Nevada is addressed separately.

    **i.   Haidermota BNR**

In its opposition to the motion to dismiss, Elko Broadband argues that Haidermota BNR "purposefully availed" itself of doing business in Nevada because (1) Haidermota BNR first contacted Elko Broadband in Nevada via emails and telephone calls offering legal services; (2) Tariq Ahmad—an Elko Broadband executive—declared that he had never heard of Haidermota BNR until the firm reached out to him in Reno; and (3) Haidermota BNR sent the finalized engagement letter by email to Nevada. ECF No. 9, at 4. Haidermota BNR, with conflicting declarations, maintains that it never initiated contact with Elko Broadband via emails and phone calls to Nevada, and instead, was put in contact with Elko Broadband via a middleman who resides in Pakistan. ECF No. 4-3.

A district court may not make credibility determinations regarding conflicting declarations unless one version of facts is inherently uncredible. *Data Disc, Inc. v. Sys. Tech Assocs., Inc.*, 557

F.2d 1280, 1284 (9th Cir. 1977). If the materials raise issues of credibility and disputed questions of fact regarding jurisdiction, the district court may conduct a preliminary hearing. *Id.* There, the plaintiff must establish personal jurisdiction by a preponderance of the evidence. *Id.*

Here, however, without evaluating the credibility of the conflicting declarations, the Court finds that even if Elko Broadband's version of events is correct—and Haidermota BNR contacted Elko Broadband in Nevada with emails and phone calls—Haidermota BNR still has insufficient contacts with Nevada for this Court to exercise specific jurisdiction. It appears Elko Broadband is relying on its own presence in Nevada to argue that Haidermota BNR availed itself of the privileges of doing business in Nevada. Haidermota BNR's contacts with Nevada "may be intertwined with [its] transactions or interactions with [Elko Broadband] … But a defendant's relationship with a plaintiff…standing alone, is an insufficient basis for jurisdiction. *Walden*, 571 U.S. at 286. As noted above, Elko Broadband's deal with WTI involved only Pakistani parties. As such, Elko Broadband's relationship with Haidermota BNR involved only Pakistani law and procedure. Haidermota BNR lawyers are not able to practice law in Nevada, and at no point did Haidermota BNR lawyers travel or perform legal services in Nevada. Rather, Elko Broadband's executives travelled to Pakistan to meet with Haidermota BNR lawyers regarding Pakistani legal issues. Haidermota BNR never received a "benefit" from doing business in Nevada because it did not do business in Nevada.

In *Sher v. Johnson*, 911 F.2d 1357 (9th Cir. 1990), the Ninth Circuit identified a situation where a court had specific personal jurisdiction over an out-of-state law firm that represented an in-state client for an out-of-state matter. In *Sher*, a California plaintiff sued a Florida defendant in California court alleging legal malpractice. *Id.* at 1360. The Court determined that a retainer agreement as well as mail and telephone communications were not enough to establish the purposeful availment prong of the specific jurisdiction analysis. *Id.* at 1363 ("Out-of-state legal representation does not establish purposeful availment of the privilege of conducting activities in the forum state, where the [firm] is solicited in its home state and takes no affirmative action to promote business within the forum state.") Rather, it was an additional deed of trust between the parties that did establish purposeful availment.

6

In the present case, Haidermota BNR's actions did not create sufficient contacts with Nevada simply because it allegedly directed its conduct at Elko Broadband who it knew was a Nevada resident. The Complaint does not allege that Haidermota BNR advised Elko Broadband on any Nevada matter, and the mere fact that an out-of-state law firm was retained by a Nevada resident does not establish specific personal jurisdiction in Nevada. Haidermota BNR's relevant conduct occurred almost entirely in Pakistan, with some email and telephone communications, and in as much that it affected Elko Broadband in Nevada is ultimately too attenuated a connection. Accordingly, the Court cannot find that Haidermota BNR purposefully directed its actions to Nevada, and thus it cannot exercise specific jurisdiction over Haidermota BNR.

    **ii.   Ferguson**

Like Haidermota BNR, Ferguson is not subject to specific jurisdiction in Nevada because it did not purposefully avail itself of the privilege of conducting business in Nevada. In its opposition to the motion to dismiss, and with a supporting declaration, Elko Broadband argues that Ferguson "approached [Elko Broadband] via telephone and later emails offering its services to [Elko Broadband], a Nevada corporation…" ECF No. 12, at 6. However, like with Haidermota BNR, Ferguson denies that it initiated contact with Elko Broadband, and provided a declaration stating that Ferguson connected with Elko Broadband through a Pakistani citizen familiar with both parties. ECF No. 14, at 7.

The Court again finds it unnecessary to evaluate the credibility of the conflicting declarations because even if Ferguson made the initial contact with Elko Broadband, there would still be insufficient contact with the state of Nevada to exercise specific jurisdiction. As discussed in detail above, mere emails and phone calls to Elko Broadband in Nevada do not establish sufficient contact if all the services Ferguson performed occurred in Pakistan and the harms and benefits of those services materialized in Pakistan. *Sher*, 911 F.2d at 1363 (discussing why out-of-state representation does not establish purposeful availment). Like with Haidermota BNR, Elko Broadband executives travelled to Pakistan to meet with Ferguson because Ferguson was familiar with Pakistan and its approach to international transactions. The fact that Elko Broadband was from Nevada created no benefit to Ferguson outside the simple business relationship. *Fiore*, 571

U.S. at 286. Therefore, the Court finds that these contacts are too attenuated to create a sufficient connection with Nevada to exercise specific jurisdiction.

### C. Forum Selection Clause

In its motion to dismiss, Haidermota BNR further contends that the forum-selection clause contained in the engagement letter requires the Court, under *forum non conveniens*, to dismiss the action so the parties can adjudicate in Karachi, Pakistan, as agreed upon. ECF No. 4, at 7.

The preselected forum set forth in a forum-selection clause is afforded great deference. *Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49 (2013) (recognizing that the choice of an alternate forum "merits no weight"). Importantly, "…courts should evaluate a forum-selection clause pointing to a nonfederal forum in the same way that they evaluate a forum-selection clause pointing to a federal forum…. When the parties have agreed to a valid-forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that case." *Id.* at 580. If transfer is impossible because the forum is a foreign court, "a federal district court may dismiss an action if a court abroad is the more appropriate and convenient forum for adjudicating the controversy." *Sinochem Intl Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422 (2007). If, however, the court determines that adjudicating in a foreign court is too "difficult and inconvenient," then the court may conclude that it would be unreasonable to hold the parties to their original bargain. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18 (1972). Still, the parties' private interests hold little merit when faced against a valid forum-selection clause. *See Atl. Marine Constr. Co.*, 571 U.S. at 582 ("[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses…"); *Bremen*, 407 U.S. at 17–18 ("[w]hatever 'inconvenience' [the parties] would suffer by being forced to litigate in the contractual forum as [they] agreed to do was clearly foreseeable at the time of contracting.")

Here, the chosen forum is in Karachi, Pakistan, for "all claims, disagreements and disputes directly or indirectly arising out of [Haidermota BNR's] legal services…" ECF No. 4-2, at 9. Elko Broadband claims that it is unduly burdensome to adjudicate its claims in Pakistan because (1) the

U.S. State Department advises that U.S. citizens not travel to Pakistan out of safety concerns; and (2) there is a severe backlog of judicial cases in Pakistan.[2]

However, when closely examined, these "private interests" of Elko Broadband do not require the Court to abrogate the forum-selection clause. Elko Broadband has previously traveled to Pakistan on numerous occasions in an attempt to solidify the transaction with WTI and WTL. When Elko Broadband entered a contract to litigate all disputes in Pakistan, it knew that a distant forum might impose certain burdens on its litigation efforts. It was only after the transaction went sour did it attempt to denigrate the Pakistani judicial system and bring up safety concerns that never existed before. Therefore, because the parties agreed to a specific forum to resolve their disputes, the Court grants the motion to dismiss considering the more appropriate and agreed upon forum is in Karachi, Pakistan.

## IV.   CONCLUSION

IT IS THEREFORE ORDERED that Haidermota BNR's motion to dismiss (ECF No. 4) is **GRANTED.**

IT IS FURTHER ORDERED that Ferguson's motion to dismiss (ECF No. 6) is **GRANTED**.

IT IS SO ORDERED.

DATED this 11th day of March, 2021.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

---

[2] Elko Broadband, in a supporting declaration, claims that it physically crossed out the forum-selection clause when it signed the engagement letter. ECF No. 9-2, at 2. However, Elko Broadband has not provided the Court with a copy of the engagement letter demonstrating that it crossed out the forum-selection clause. *See Lowden Inv. Co. v. General Elec. Credit Co.*, 741 P.2d 806, 809 (Nev. 1987) ("…parol evidence is not admissible to vary or contradict terms of a written agreement."); *see also Nigro v. Sears, Roebuck and Co.*, 784 F.3d 495, 497 (9th Cir. 2015) ("[t]he district court can disregard a self-serving declaration that states only conclusions and not facts that would be admissible evidence.").

9